John Roscoe & Wife *v.* A. Ledford's Adm'r, et al.
A. H. Miller's G'd'n, et al., *v.* A. Ledford's Adm'r, et al.

**Guardian and Ward—Investment of Ward's Money.**

When a guardian invests his ward's money in stocks and bonds without the advice of the chancellor, he acts at his peril, and if the money is lost, the guardian will be held liable for the loss.

APPEALS FROM TRIGG CIRCUIT COURT.

March 5, 1878.

Opinion by Judge Pryor:

A guardian undertaking to invest the money of his wards in stock, county bonds, etc.., without asking the advice of the chancellor, is acting at his peril, and if this judgment should prove defective as to the safety of the securities in which the investment is made, and his wards suffer a loss by the depreciation of such public securities, the guardian will be held responsible.

That the guardian made the investment in good faith and upon the judgment of others in whom he had the right to rely, as well as his own judgment, is not a defense that shields him from responsibility. In this case there is no doubt but that the guardian supposed the purchase of the bonds of the county of Caldwell would be a more secure investment of his ward's money than loaning it upon personal security. Still he had no authority to make such a purchase, and the present guardian should not have been compelled to receive them. The 19th section of Chap. 48, General Statutes, cannot apply to this case for the reason that it was not the law of the land at the time the investment was made; nor will the chancellor sanction the act of the guardian because he finds this section in force at the institution of this action, or when the guardian made a settlement of his accounts with the county court or by reason of its enactment while the former guardian held the bonds. That section provides, in substance, that courts of equity, upon the application of trustees, guardians, etc., by petition under oath, may cause the money of such ward or cestui que trust to be invested under the direction of the court in real estate, or in safe interest-paying bonds of the United States, state of Kentucky, or some county or city in this commonwealth, etc., wherever it shall be made apparent to the court that it is to the interest of the wards, etc., that such investment shall be made.

The object of this enactment was to enable the guardian to make such investment, a right he could not prior to that time have exer-

cised; and in order to fully protect the rights of those who are in no condition to look to their own interests, the legislature was not willing to risk the judgment alone of the fiduciary as to the propriety of such investment, but required him before making such a disposition of the ward's funds to have the advice and sanction of the chancellor. Such securities are often uncertain as well as constantly fluctuating in value, and to prevent fiduciaries from passing to the account of the beneficiaries of the trust such evidence of investment where the speculation proves disadvantageous, the law requires that courts of equity shall not only advise, but see that the investment is properly made.

There is no evidence, however, of any improper motive on the part of the guardian in this case, and while the investment may have been thought proper by the friends of all parties at the time it was made, still it lacked the sanction of the chancellor, and will result in loss to the wards if compelled to take them, as the bonds have depreciated in value. The statute would be no protection to the ward if the fiduciary could make the investment upon his own judgment, risking the approval of the chancellor when called to account, upon the idea that, if he acted in good faith and did no more than a court of equity would have authorized him to do if called on, he is not responsible.

It is never very difficult in controversies between guardians and their wards to show a faithful and proper administration of the ward's estate on the part of the guardian, and to permit the rights of the wards to depend upon proof alone as to the propriety of the investment at the time it was made would be deductive of the best interests of those who are incapable in law of managing their own estates.

In the case of *Smith v. Smith,* 7 J. J. Marsh. 238, it is held that a guardian who invested the ward's money in Kentucky bank stock could not require the ward to take it, since it had depreciated in value. In the case of *Clark & Wife v. Anderson,* Manuscript Opinion, the same doctrine was recognized by this court, holding that an investment in secured mortgage bonds of the Louisville, Cincinnati & Lexington Railroad Company could not be sanctioned, nor the ward compelled to take them. In that case, as in this, it was clearly shown that the investment at the time it was made was such as a man of ordinary prudence and business habits would have made under the circumstances. The question of prudence or diligence in the management of the ward's estate cannot affect the rights of the ward

when there was no law in existence authorizing such action on the part of the guardian at the time the investment was made.

We cannot well see how the case depends in any manner on the construction of Sec. 19, General Statutes, title "Guardian and Ward." The fact that the bonds have greatly depreciated in value evidences the bad judgment of the guardian in making the investment; and in the present case if he had called on the chancellor for advice it would not have been given, as there was no law then in force permitting such an investment to be, made, even under the supervision of the chancellor, and therefore the representation of the former guardian and the surety in the guardian bond must account for any pay over the monies of the wards.

Judgment *reversed* in both appeals and cause remanded for further proceedings consistent with this opinion.

*T. C. Dabney, Robert Crenshaw, for appellants.*

*R. A. Bennett, Fenton & Simms, for appellees.*